### REEVES *v.* STATE

[No. 120, October Term, 1951.]

*Decided March 7, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*William S. Wilson, Jr.,* with whom was *Edward J. Ryan,* on the brief, for appellant.

*A. T. Hartman,* Assistant Attorney General, with whom were *Hall Hammond,* Attorney General, and *Paul M. Fletcher,* State's Attorney for Allegany County, on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a conviction of perjury, tried before a court and jury, and judgment and sentence of one year in the House of Correction. The only question presented is whether the court erred in overruling a motion for directed verdict at the close of the whole case.

The alleged perjury was committed in the trial of *State v. Kerling et al.,* in the Circuit Court for Allegany County in September, 1951. Kerling and two other defendants were tried on a charge of wilfully and malicious-

ly burning a powder house on December 28, 1950. An important issue of fact relating to the guilt of Kerling was whether or not a certain truck was in his possession on December 28, 1950. Kerling's defense was that the truck had been repossessed on December 27, 1950 by Reeves, and that, therefore, the truck was not in Kerling's possession on December 28.

At the trial of the *Kerling* case, Reeves testified that he was in the automobile business in Westernport with his father, and in April, 1950 they had sold a Chevrolet pick-up truck to Kerling. The truck was financed by a note, given to a local bank, on which the automobile company was responsible. Kerling failed to pay the installments due, and Reeves testified he personally repossessed the truck on December 27. He remembered the exact date because he made an entry in pencil in a ledger which read: "Truck repossessed 12-27-50". This ledger was produced and offered in evidence. It contained no other entries of repossessions. Reeves also testified that upon repossession, the truck was placed in the the company garage, that it was kept there for about two weeks, when it was sold to one Fazenbaker, that he did not loan it to Kerling, and that Kerling could not have obtained it for use during that period. The ledger contained an entry that the truck was sold to Fazenbaker on February 5, 1951.

At the trial of the instant case, the appellant gave similar testimony. He produced no corroborating testimony except that of his brother, who had no personal knowledge as to the time of repossession except the entry in the ledger. The State produced five witnesses who testified they had seen Kerling in a Chevrolet pick-up truck at various times between December 28 and January 6. The appellant contends there was no sufficient identification of the truck. However, Lieutenant Chapman testified it was a green, Chevrolet pick-up, 1941-1942 model; that when Kerling was taken into custody on January 4 he "described the truck that he owned and told us where the truck was"; that they went to the

place described, found and searched "the same kind of a truck" as Kerling had described. Trooper Hart testified he saw Kerling in Westernport in a green, 1941, Chevrolet pick-up truck on January 4. Kerling was behind the wheel. He saw him again on January 6, in the same truck. He had seen Kerling driving it many times previous to December 28, and it was the same truck. H. B. Clark, who was with Trooper Hart on January 6, also testified to searching Kerling's truck, a 1941 Chevrolet pick-up, dark green. He also testified the truck was repossessed on January 10, 1951. Chief of Police Hanlin testified that on January 4 he and Trooper Hart questioned Kerling. They found him driving a dark green, 1941, Chevrolet truck; that he had seen Kerling driving the same truck on many occasions, some prior to December 28, 1950. Richard Fazenbaker, who was working with Kerling when the officers arrested him, testified that they were in Kerling's truck, a green, 1941, Chevrolet pick-up. He also testified the truck was repossessed, but couldn't fix the date. His brother later bought the truck.

Since the adoption of the amendment to Article 15, section 5 of the Constitution of Maryland, effective December 1, 1950, there can be no doubt of our right to pass upon the legal sufficiency of the evidence in a criminal case. *Shelton v. State,* 198 Md. 405, 412, 84 A. 2d 76, 80. Cf. *Wright v. State,* 198 Md. 163, 169, 81 A. 2d 602, 606. The appellant questions the sufficiency of the identification of the truck by the State's witnesses, and argues that since none of these witnesses took the license number of the truck, and there are many trucks of that type on the roads, their testimony is too indefinite. This argument overlooks the extreme unlikelihood that Kerling would be in possession of a truck of the same model after its repossession on December 27. The case of *Morris v. Twigg,* 190 Md. 324, 331, 58 A. 2d 719, 722, relied on by the appellant, is clearly distinguishable. In that case the plaintiff attempted to identify a truck, as the one that forced him off the road, principally by

reason of the fact that he later overtook it at a point twenty miles from the accident. Moreover, the truck he overtook was of a different make, having a different body, and the main point upon which identification depended, the absence of marker lights, was shown to be illusory. He was unable to state the color or any other distinguishing signs. We said in that case, however: "circumstantial evidence alone may be sufficient to support a rational inference in many cases."

In the instant case there was positive testimony that the truck in which Kerling was seen on January 4 and 6 was the same truck he had been using in December. If his green, 1941, Chevrolet pick-up truck had been repossessed on December 27, no explanation is offered as to how he could have been driving a truck of that type on later dates. The question is not so much one of identity of the vehicle, as it is one of credibility. That, of course, is a question for the jury. We think the evidence was legally sufficient for submission to the jury.

*Judgment affirmed, with costs.*